# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DEBORAH ANN FERGUSON,
Plaintiff,

Case No. 1:18-cv-465
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

**REPORT AND
RECOMMENDATION**

Plaintiff Deborah Ann Ferguson brings this action pursuant to 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's application for Child's Disability Insurance Benefits (DIB). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in

opposition (Doc. 16), and plaintiff's reply (Doc. 17).

## I. Procedural Background

Plaintiff was born in 1956 and turned 22 in January 1978. She has a high school

education. She has not worked in competitive employment in the relevant past. Plaintiff filed

her application for DIB in May 2015, alleging disability since her birth due to Incontinentia

Pigmenti - unusual skin pigmentation; health issues related to developmental abnormalities and

congenital deformities; and breathing complications. The application was denied initially and

upon reconsideration. Plaintiff then requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Mark Hockensmith. On September 6, 2017, the ALJ issued a

decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

Child's benefits based on disability are provided for under 42 U.S.C. § 402(d). A claimant may be entitled to DIB if she is at least 18 years old and has a disability that began before she turned 22 years old. 20 C.F.R. § 404.350(a)(5). *See also Miller v. Shalala*, 859 F. Supp. 297, 298 (S.D. Ohio 1994) (quoting 42 U.S.C. § 402(d)(1)(B)(ii)) (a requirement for DIB is that the claimant be "under a disability . . . which began before [s]he attained the age of 22. . . ."). To qualify for DIB, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To establish eligibility for retroactive child's DIB, the claimant must show that she "has been 'able to work at the substantial gainful activity level'" as defined under 20 C.F.R. § 404.1572. *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018). The claimant must make a showing of "continuous disability" by establishing: (1) that she "was disabled on or before [her] birthday (here, the twenty-second birthday); and (2) that such disability continue[d] to the date of the application." *Id.* at 300 (citing *Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973)). *See also Baker v. Barnhart*, 101 F. App'x 992, 993 (6th Cir. 2004) ("To satisfy the

2

requirements of child insurance benefits, [the claimant] must establish . . . that she was disabled

as a child or that she is disabled as an adult and that she was continuously disabled from the date

of her twenty-second birthday . . . through the date that she applied for benefits.") (citing 42

U.S.C. § 402(d)(1); *Futernick,* 484 F.2d at 648).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. [Plaintiff] was born [in] . . . 1956. She attained age 22 [in] January 1978 (20
CFR 404.102 and 404.350(a)(5)).

2. [Plaintiff] did not perform substantial gainful activity in the relevant past (20
CFR 404.1571, *et seq.*).

3. Prior to attaining age 22, [plaintiff] had the following severe impairments:
aberrant right subclavian artery, left eye blindness, incontinentia pigmenti, slight
developmental delay (20 CFR 404.1520(c)).

4. Prior to attaining age 22, [plaintiff] did not have an impairment or
combination of impairments that met or medically equaled the severity of one of
the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
404.1520(d), 404.1525 and 404.1526).

5. Prior to attaining age 22, [plaintiff] had the residual functional capacity to
perform a full range of work at all exertional levels subject to the following non-
exertional limitations: (1) no climbing of ladders, ropes, or scaffolds; (2) no work
at unprotected heights or with dangerous machinery; (3) no driving; (4) no
requirement to read fine print as a part of essential job duties; (5) no need for
peripheral vision as part of essential job duties; (6) limited to simple, routine
tasks; (7) limited to a static work environment with few changes in routine; (8)
no fast-paced work or strict production quotas; (9) no requirement for math or
reading above a 6th-grade level.

6. [Plaintiff] has no past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born [in] . . . 1956. She attained age 22 [in] January 1978 (20
CFR 404.1563).

8. [Plaintiff] has at least a high school education and a few college credits (20
CFR 404.1564).

4

9. [Plaintiff] does not have transferable work skills within the meaning of the Social Security Act (20 CFR 404.1568).

10. Prior to attaining age 22, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed (20 CFR 404.1569 and 404.1569 (a)).[1]

11. [Plaintiff] was not "disabled," as defined in the Social Security Act, at any time prior to January 13, 1978, the date that she attained age 22 (20 CFR 404.350(a)(5) and 404.1520(g)).

(Tr. 16-23).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as cafeteria attendant (119,500 jobs nationally), laundry press operator (37,800 jobs nationally) and buffing machine tender (32,500 jobs nationally). (Tr. 23, 57).

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that the ALJ erred: (1) in finding that plaintiff had no exertional limitations prior to attaining age 22; (2) in failing to discuss or evaluate plaintiff's testimony and/or credibility; and (3) in failing to evaluate whether plaintiff's impairments met Listing 12.11. (Docs. 11, 17).

**1. Exertional impairments prior to age 22**

The ALJ found that plaintiff had four severe impairments prior to attaining age 22 which affected her ability to do basic work-related functions: (1) aberrant right subclavian artery, (2) left eye blindness, (3) incontinentia pigmenti[2], and (4) slight developmental delay. (Tr. 17). The

---

[2] "Incontinentia pigmenti is a condition that can affect many body systems, particularly the skin. . . . It is characterized by skin abnormalities that evolve throughout childhood and young adulthood. . . . Other signs and symptoms . . . can include hair loss (alopecia) . . ., dental abnormalities . . ., [and] eye abnormalities that can lead to vision loss. . . . Most people with incontinentia pigmenti have normal intelligence; however, this condition may affect the brain. Associated problems can include delayed development or intellectual disability, seizures, and other

ALJ recognized that plaintiff's impairments were congenital and resulted in some limitations. (Tr. 20; *see also* Tr. 17 - Children's Hospital records showed signs of aberrant right subclavian artery (Tr. 2056-69); a skin pigmentation disorder (incontinentia pigmenti) (Tr. 2024, 2051); left eye cataract and replacement of the left eye with a prosthesis in 1961 (Tr. 2024, 2021); and some developmental delay (Tr. 2024, 2059). The ALJ included restrictions in the RFC finding to account for left-eye blindness and any developmental delay. (Tr. 20). Otherwise, the ALJ found that while "the vast majority of the evidence of record" showed that plaintiff had "significant impairments since 2000," there was no "convincing objective medical evidence or clinical findings" before the date plaintiff attained age 22 to show that she had greater functional limitations than those assessed by the ALJ. (Tr. 17, 20).

First, the ALJ found that though hospital records establish that plaintiff exhibited medical signs of aberrant right subclavian artery at birth in 1956, her heart and lungs otherwise appeared normal. (Tr. 17, citing Tr. 2056-69). Plaintiff underwent implantation of a pacemaker for a cardiac abnormality in 2000 at age 44 (Tr. 17, citing Tr. 1113), and the pacemaker was replaced in May 2013 when plaintiff was age 57. (Tr. 17 citing Tr. 1076; *see* Tr. 1075-77). However, the only medical evidence related to her cardiac condition prior to that date is from 1973 and shows that plaintiff exhibited no signs of heart disease, and results of EKG testing and a chest x-ray were normal. (Tr. 20, citing Tr. 2070). Further, although 1961 treatment notes report that symptoms of epilepsy can result from plaintiff's condition, as of that time she had not developed symptoms of epilepsy, her neurological examination was within normal limits, she had "done

---

neurological problems." https://ghr.nlm.nih.gov/condition/incontinentia-pigmenti.

well with no specific problems except occasional constipation," and vital signs were normal. (Tr. 20, 22, citing Tr. 2009, 2070). In addition, the record first mentions impaired hearing in 2014 when plaintiff saw Dr. Lee Zimmer, M.D., for unspecified hearing loss. (Tr. 17, citing Tr. 1105-21).

In finding that this evidence did not support greater functional limitations prior to age 22 than those included in the RFC finding, the ALJ determined that the medical evidence of record was sparse and was "not particularly relevant" to assessing plaintiff's condition for that time frame. (Tr. 17, 20). The ALJ found that there was a "long gap in the medical record" between cardiac testing in 1973, which was normal (Tr. 2070), and additional evidence in 2005. (Tr. 22). Plaintiff does not dispute that there is a "long gap in the medical record" between 1973 and 2005 as found by the ALJ. (Doc. 11 at 3). Plaintiff argues, though, that there is evidence of disability "prior to 2005" that is relevant to the period before she turned 22. (*Id.*). Plaintiff points to (1) a decision rendered by ALJ John T. Kelly, III, in January 1989 granting her prior application for Supplemental Security Income (SSI) as of February 5, 1988, and (2) the treatment notes and opinion of treating pulmonologist Dr. Daniel Tanase, M.D., of UC Health Physicians. (*Id.*). However, this evidence does not support a finding that plaintiff was disabled by her impairments before she attained the age of 22.

First, ALJ Kelly found in his 1989 decision that plaintiff was disabled as of February 5, 1988, based primarily on an undiagnosed personality disorder "which prevents all work activity"; left eye blindness; and a congenital heart defect "which results in easy fatigability." (Tr. 78-79). ALJ Kelly stated that "[a]ccording to several reports, [she] would have difficulty

performing any type of excessive or strenuous work." (Tr. 78). Plaintiff notes that the ALJ's 1989 finding was "based upon several reports," and the 1961 records from Cincinnati Children's Hospital show that examination in 1961 disclosed pectus excavatum and a history of aberrant right subclavian artery. (Doc. 11 at 3, citing Tr. 2009). However, it is not clear what reports ALJ Kelly was referencing and whether they date back to the time frame at issue here. (*See* Tr. 78). Evidence that was before ALJ Kelly but was not submitted in connection with plaintiff's current application for child's DIB is not relevant to plaintiff's request for DIB and this appeal.

Further, insofar as plaintiff relies on prior findings and medical records which disclose the presence of congenital impairments and chronic conditions that predate age 22, the existence of these severe impairments is not sufficient in and of itself to require a finding of disability prior to age 22. "[A] diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual." *Dillon v. Astrue*, No. 1:09-cv-896, 2011 WL 900987 (S.D. Ohio Feb. 14, 2011) (Report and Recommendation) (Bowman, J.), *adopted sub nom., Dillon v. Comm'r of Soc. Sec.*, 2011 WL 901789 (S.D. Ohio Mar. 14, 2011) (Barrett, J.) (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990)). *See also Clayburn-Day v. Commissioner of Social Sec.*, No. 1:10-cv-859, 2012 WL 423735, at *1 (S.D. Ohio Feb. 9, 2012) (a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment)). Plaintiff does not point to anything in ALJ Kelly's prior decision or in the records that were before ALJ Kelly which show that her congenital and chronic conditions imposed debilitating functional limitations prior to the date she turned age 22. The ALJ was not required to include additional restrictions in the RFC to

account for plaintiff's pectus excavatum, aberrant right subclavian artery, or other severe impairments based on the prior ALJ's decision and the 1961 medical records.

As further evidence of disability predating age 22, plaintiff relies on medical records showing that Dr. Tanase, who began treating her in April 2014, reported pectus excavatum on examination and found that plaintiff was suffering from restrictive lung disease due to body habitus with deformities secondary to *in utero* Thalidomide exposure. (*Id.* at 3, citing Tr. 671-72). Plaintiff also relies on an opinion issued by Dr. Tanase in October 2017 that plaintiff's medical conditions, including the deformity in her thoracic cavity, were likely related to *in utero* Thalidomide exposure. (*Id.* at 3-4, citing Tr. 8). Plaintiff argues that this evidence shows her impairments have consistently been characterized as chronic, congenital, and caused by *in utero* exposure, and the evidence is therefore relevant to the time period before she attained age 22. (*Id.* at 3-4).

Initially, the Commissioner argues that Dr. Tanase's letter opinion cannot be considered in connection with plaintiff's appeal brought under sentence four of 42 U.S.C. § 405(g) because the evidence was submitted to the Appeals Council after the ALJ's decision. (Doc. 16 at 11-12). The letter, which is dated October 26, 2017, states "that [plaintiff's] medical conditions, including deformity of the thoracic cavity, are likely related to Thalidomide exposure in her mother when she was pregnant with [plaintiff] - a chronic condition for [plaintiff]." (Tr. 8). The letter was generated and submitted to the Appeals Council after the ALJ issued his decision on September 6, 2017. (Tr. 2). The Appeals Council declined to consider the evidence because it

did "not show a reasonable probability that it would change the outcome of the decision." (Tr. 2).

Evidence that a claimant submits to the Appeals Council after the ALJ's decision "cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996)). "The district court can, however, remand the case for further administrative proceedings [under sentence six of § 405(g)] in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.*; *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding"; it is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence"; and the claimant "shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citations omitted).

Plaintiff did not submit Dr. Tanase's October 26, 2017 letter until after the ALJ issued his decision on September 6, 2017. Thus, the Court cannot consider the evidence in connection with this appeal. In order to obtain a remand under sentence six of 42 U.S.C. § 405(g) for consideration of the evidence, plaintiff must show that the evidence is "new" and "material," and that there was good cause for failure to present the evidence at the ALJ hearing. Plaintiff does not address consideration of this additional evidence in her statement of errors or in her reply

memorandum, and she has not attempted to make this showing. (Docs. 11, 17). Plaintiff has

therefore waived any argument that this matter should be remanded pursuant to sentence six of §

405(g) for consideration of Dr. Tanase's letter opinion. *See Kuhn v. Washtenaw County,* 709

F.3d 612, 624 (6th Cir. 2013) (citing *Caudill v. Hollan,* 431 F.3d 900, 915 n.13 (6th Cir. 2005)

("arguments not raised in a party's opening brief, as well as arguments adverted to in only a

perfunctory manner, are waived.")). *See also Rice v. Comm'r of Soc. Sec.,* 169 F. App'x 452,

454 (6th Cir. 2006) (a plaintiff's failure to develop an argument in a Statement of Errors

challenging an ALJ's non-disability determination amounts to a waiver of that argument);

*McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived).

The Court can consider Dr. Tanase's treatment records, which were part of the record

before the ALJ. Dr. Tanase's treatment records document congenital and chronic impairments,

but they do not support a finding that these impairments imposed debilitating functional

limitations prior to the date plaintiff attained age 22. Plaintiff first saw Dr. Tanase in April 2014

when she was 58 years old. (Tr. 667-72). Dr. Tanase evaluated her for shortness of breath with

exertion. Plaintiff also reported she used to have a cough but did not anymore; she had a

prosthetic left eye; she was going to see a doctor for allergies; and it was believed her chest wall

deformity and eye problems were related to her mother's exposure to Thalidomide during

pregnancy. (Tr. 671). On pulmonary examination, her effort and breath sounds were normal and

she had no respiratory distress, wheezes, or rales. (Tr. 672). Dr. Tanase noted on examination

"pectus excavatum." He assessed plaintiff with "Shortness of breath/Chronic cough/Deformities secondary to Thalidomide used by her mother during pregnancy." He noted that plaintiff likely had a "restrictive lung disease, due to body habitus" and he questioned whether she had asthma, though her cough was gone. (*Id.*). She was to undergo allergy testing and return for follow-up in six months.

Dr. Tanase next saw plaintiff in June 2014. (Tr. 520-31). Allergy testing had been performed in the interim by Dr. Lee Zimmer, M.D., who reported that the results were negative and diagnosed plaintiff with non-allergic rhinitis. (Tr. 536). Dr. Tanase again noted pectus excavatum present on examination but no other pulmonary symptoms. (Tr. 530). The diagnoses were shortness of breath, restrictive lung disease, chronic cough, and deformities secondary to Thalidomide used by her mother during her pregnancy. (Tr. 531).

Dr. Tanase saw plaintiff in October 2014. (Tr. 504-511). The records note that plaintiff has "occasional shortness of breath, mainly with exercise." (Tr. 510). She exhibited no pulmonary symptoms on examination but pectus excavatum was noted. A chest CT scan performed in October 2014 disclosed an "aberrant right subclavian artery" and "[s]table appearance of mixed attenuated nodule within the lingula." (Tr. 511). A follow-up CT scan was recommended in one year to evaluate the nodule for stability. (*Id.*). Dr. Tanase added a lung nodule to his diagnoses, and he noted that plaintiff's cough was gone. He planned to repeat the CT scan of the chest in 9 months. (Tr. 511).

Plaintiff saw Dr. Tanase on November 6, 2014. (Tr. 500-05). Plaintiff wanted to "discuss the effects of Thalidomide exposure from her mother and her current condition" as she

wanted to apply for social security benefits, and she had brought "lots of records" from Children's Hospital. (Tr. 504). Plaintiff did not report any changes in her condition, and the findings and diagnoses were unchanged from her previous visits. (Tr. 504-05). Dr. Tanase told plaintiff he would review the records she had brought. (Tr. 505).

Plaintiff returned to see Dr. Tanase five months later in April 2015. (Tr. Tr. 494-99). Plaintiff complained of shortness of breath, mainly with exertion, and she wanted to know more about her restrictive lung disease. (Tr. 498). There were no new findings, and Dr. Tanase again noted that he would review plaintiff's paperwork. (Tr. 499). Dr. Tanase saw plaintiff in October 2015 but made no change in her diagnoses. (Tr. 447-52).

Dr. Tanase's treatment notes support a finding that plaintiff suffered congenital and chronic medical conditions. However, there is no indication in Dr. Tanase's records that plaintiff's congenital and chronic medical conditions caused symptoms or functional restrictions prior to the date plaintiff turned age 22. Plaintiff has not cited any other record evidence to show she suffered from debilitating functional limitations prior to age 22. Plaintiff simply alleges, without citing any supporting authority, that the ALJ impermissibly relied on the opinions of the state agency reviewing physicians, Dr. Gerald Klyop, M.D., and Dr. Maureen Gallagher, M.D., who did not have access to the Cincinnati Children's Hospital Medical records when they reviewed the record and found insufficient evidence of a disabling impairment prior to age 22. (Doc. 11 at 4, citing Tr. 61-66, 68-75). Plaintiff contends that because the record did not include a medical opinion that included consideration of those records, the ALJ erroneously crafted the RFC finding based solely on his lay opinion. (Id.).

14

It is well-settled that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity." *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir. 2010) (internal citations and quotations omitted) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Id.* (citing *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009); *Dixon v. Massanari,* 270 F.3d 1171, 1177-78 (7th Cir. 2001)). *See also* 20 C.F.R. § 404.1546(c) (the ALJ is responsible for assessing a residual functional capacity). As the Sixth Circuit has explained:

> [The plaintiff] also argues that the ALJ's RFC lacks substantial evidence because no physician opined that [the plaintiff] was capable of light work. But "the *ALJ* is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 728 (6th Cir. 2013) (emphasis added). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *1-2 (July 2, 1996). "[T]o require the ALJ to base h[is] RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability." *Rudd,* 531 F. App'x at 728.

*Shepard v. Comm'r of Soc. Sec.,* 705 F. App'x 435, 442-43 (6th Cir. 2017); *see also Mokbel-Aljahmi v. Comm'r of Soc. Sec.,* 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.").

Here, the ALJ did not impermissibly craft an RFC by relying on the state agency reviewing physicians' opinions and the medical evidence of record. The ALJ acknowledged that

Drs. Klyop and Gallagher did not have access to the Children's Hospital Medical records, which were not submitted into the record until the hearing level. (Tr. 17, citing Tr. 2005-70). The ALJ considered the evidence submitted after their assessments and reasonably found that while plaintiff had "severe" impairments of aberrant right subclavian artery, left eye blindness, incontinentia pigmenti, and slight developmental delay prior to age 22, she had not shown that her impairments limited her "exertional capabilities" during the time period in question. (Tr. 17-18, 20). Plaintiff has not pointed to evidence in the Children's Hospital records which indicates that contrary to the ALJ's finding, her severe impairments imposed exertional restrictions prior to age 22. The ALJ did not erroneously rely on his own lay opinion of the evidence to reach this conclusion. The ALJ relied on the opinions of Drs. Klyop and Gallagher, the hospital records subsequently entered into the record, and plaintiff's testimony in crafting an RFC for the relevant time period that is substantially supported by the record. Plaintiff's first assignment of error should be overruled.

## 2. The ALJ's assessment of plaintiff's subjective complaints

Plaintiff alleges as her second assignment of error that the ALJ erred by failing to conduct *any* evaluation of her subjective complaints under SSR 16-3p. (Doc. 11 at 4-5). Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016), "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." This Social Security Ruling eliminates the use of the term "credibility" and clarifies "that subjective symptom evaluation is not an examination of an individual's character" but an evaluation of the individual's symptoms in the disability process.

Soc. Sec. R. 16-3p, 2016 WL 1119029, *1.[3]  This involves a two-step process.  First, the ALJ

determines if the record contains objective medical evidence of an underlying medically

determinable impairment that could reasonably be expected to produce the individual's

symptoms, such as pain.  *Id.* at *2; see 20 C.F.R. § 404.1529(a); *see also Jones v. Comm'r of*

*Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).  This determination does not look at the severity

of a claimant's pain or other symptoms but whether an individual has a medically determinable

impairment that could reasonably cause such symptoms.  SSR 16-3p explains:

> [I]f an individual has a medically determinable impairment
> established by a knee x-ray showing mild degenerative changes, and
> he or she alleges extreme pain that limits her ability to stand and
> walk, we will find that individual has a medically determinable
> impairment that could reasonably be expected to produce the
> symptom of pain.  We will then proceed to step two of the two-step
> process, even though the level of pain an individual alleges may
> seem out of proportion with the objective medical evidence.

SSR 16-3p, *3.

Second, the ALJ must evaluate the intensity and persistence of an individual's symptoms,

such as pain, and determine the extent to which the individual's symptoms limit her ability to

perform work-related activities.  In evaluating the intensity, persistence, and limiting effects of

an individual's symptoms, the ALJ will "examine the entire case record, including the objective

medical evidence; an individual's statements about the intensity, persistence, and limiting effects

of symptoms; statements and other information provided by medical sources and other persons;

---

[3] For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements.

and any other relevant evidence in the individual's case record." SSR 16-3p, *4. The relevant

factors also include the individual's daily activities; the location, duration, frequency, and

intensity of pain or other symptoms; factors that precipitate and aggravate symptoms; the type,

dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms;

treatment, other than medication, an individual receives for pain or other symptoms; and any

other factors concerning an individual's functional limitations and restrictions due to pain or

other symptoms. *Id*. at *7 (citing 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3)). *See also*

*Rogers*, 486 F.3d at 247 (citations omitted).

Plaintiff testified at the May 17, 2017 hearing that she suffered fetal thalidomide

exposure. (Tr. 39). Plaintiff testified to "multiple birth defects" which led to a difficult

childhood and bullying during her school years. (Tr. 40-42). Plaintiff testified that physically,

she has less lung capacity due to her deformed chest cavity, a congenital heart defect which

caused her to always become fatigued very easily, so that she was unable to "keep up" with the

other children and had episodes of passing out. (Tr. 42, 43). Plaintiff had problems with

concentration, reading comprehension, and math, and she was easily distracted. (*Id.*). Plaintiff

also testified that she had hearing loss, more severe on the right side, which caused difficulty in

childhood and at school. (*Id.*). She testified that she missed a lot of days at school due to the flu

and allergic rhinitis, and she testified she has asthma. (Tr. 43). She testified that she slept more

than normal and took frequent naps. (Tr. 43). Plaintiff graduated from high school and attended

college for one year, but she said the effort was "unsuccessful." (Tr. 47). She testified that she

made "several unsuccessful attempts" to work through the Bureau of Vocational Rehabilitation

(BVR). (Tr. 48). Plaintiff testified she has never held a driver's license. (Tr. 49). She had issue with sun exposure due to her congenital skin condition. (Tr. 50).

The Commissioner argues that the ALJ considered plaintiff's testimony, the medical evidence, and the pertinent regulatory factors and reasonably concluded that plaintiff's allegations of debilitating limitations prior to age 22 were not supported. (Doc. 16 at 13- 15). The Court agrees. The ALJ considered plaintiff's testimony and the medical evidence related to her "slight developmental delay" as documented by the Children's Hospital medical records. (Tr. 18, citing Tr. 2005-70). The ALJ found there was no medical evidence that plaintiff manifested a mental defect and/or epilepsy as a result of her medical conditions during childhood as sometimes occurred with her conditions (Tr. 2023), and there was no evidence of an intellectual disability (Tr. 2009). (Tr. 18). The ALJ nonetheless gave plaintiff "the maximum benefit of [the] doubt" concerning her allegations about her difficult childhood and school years and assessed mild to moderate limitations in her mental functioning, despite the "(minimal) evidence of record" pertinent to the time period at issue. (*Id.*). The ALJ also considered the "objective medical evidence" and "clinical findings" of record prior to age 22 and found that this evidence did not support plaintiff's allegations of debilitating limitations for that time period. (Tr. 17-18, 21-22). In addition, the ALJ relied on the absence of any evidence showing adverse side effects from treatment or medication which would have impacted plaintiff's ability to perform competitive work prior to age 22. (Tr. 22). Finally, the ALJ found that plaintiff's treatment history was not consistent with a finding of disability that had its onset prior to January 1978. (*Id.*).

Thus, contrary to plaintiff's claim that the ALJ performed no evaluation of her subjective allegations and testimony, the record shows that the ALJ evaluated plaintiff's subjective allegations in light of the relevant factors. *See* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p. The ALJ's finding that the evidence was not consistent with plaintiff's allegations of debilitating functional limitations prior to age 22 is substantially supported by the evidence. Plaintiff's second assignment of error should be overruled.

### 3. The ALJ's step three finding

Plaintiff alleges as her third assignment of error that the ALJ erred in failing to evaluate whether she met Listing 12.11 for neurodevelopmental disorders, which plaintiff raised through her counsel in a memorandum submitted prior to the ALJ hearing. (Doc. 11 at 5, citing Tr. 280-82). Plaintiff's counsel did not assert at the ALJ hearing that plaintiff met a listing. (Tr. 32-60). Plaintiff's statement of errors sets forth the criteria of Listing 12.11 and states: "This is the Listing under which the [plaintiff's] conditions fall, and not considering whether the claimant met or equaled 12.11 was error." (*Id.* at 5). Plaintiff does not make any additional allegations in her statement of errors or reply brief related to the ALJ's step three finding and whether her impairments meet or equal Listing 12.11.

The Commissioner argues that plaintiff has waived this alleged error because plaintiff did not contend she met this Listing before the ALJ, and she did not develop her argument that her impairments met or equaled Listing 12.11 in the statement of errors. The Commissioner further argues that even if the ALJ should have considered Listing 12.11, his failure to do so was harmless because plaintiff has offered no evidence to show that she meets Listing 12.11 and was

therefore harmed by the ALJ's alleged error. (Doc. 16 at 2-5). Plaintiff has not addressed the Commissioner's arguments in her reply memorandum.

The Court agrees that plaintiff has waived her argument that the ALJ erred at step three by failing to develop her argument either legally or factually in the Statement of Errors or in the reply brief. *See Kuhn,* 709 F.3d at 624; *Rice,* 169 F. App'x at 454; *McPherson,* 125 F.3d at 995-96. Plaintiff has not pointed to any evidence in the record to show her impairments meet the criteria of Listing 12.11. Plaintiff has mentioned her step three argument "in the most skeletal way, leaving the court to . . . put flesh on its bones," which constitutes a waiver of the argument. *See McPherson,* 125 F.3d at 996. Plaintiff's third assignment error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: ___8/30/19___

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DEBORAH ANN FERGUSON,
Plaintiff,

Case No. 1:18-cv-465

Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).